UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STACEY L. H.,[1]

                                 Plaintiff,                 5:21-cv-1014 (BKS)

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]

                                 Defendant.
_____

**Appearances:**

*For Plaintiff:*
Howard D. Olinsky
Olinsky Law Group
250 South Clinton Street, Suite 210
Syracuse, NY 13202

*For Defendant:*
Carla B. Freedman
United States Attorney
Heetano Shamsoondar
Special Assistant United States Attorney
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

**Hon. Brenda K. Sannes, Chief United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

       Plaintiff Stacey H. filed this action under 42 U.S.C. § 405(g) seeking review of a decision

by the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for

---

[1] In accordance with the local practice of this Court, Plaintiff's last name has been abbreviated to protect her privacy.

[2] Pursuant to Fed. R. Civ. P. 25(d), the current Acting Commissioner of Social Security, Kilolo Kijakazi, has been substituted in place of her predecessor, Commissioner Andrew Saul.

Social Security Disability Insurance ("SSDI") Benefits. (Dkt. No. 1). The parties' briefs, filed in accordance with N.D.N.Y. General Order 18, are presently before the Court. (Dkt. Nos. 14, 16). After carefully reviewing the Administrative Record,[3] and considering the parties' arguments, the Court affirms the Commissioner's decision.

## II.     BACKGROUND[4]

### A.     Procedural History

Plaintiff applied for SSDI benefits on July 9, 2019, alleging disability due to a variety of physical impairments with an alleged onset date of February 1, 2019. (R. 177–78, 197). Plaintiff's claim was denied initially on November 4, 2019 and again upon reconsideration on January 16, 2020. (R. 73, 88). Plaintiff appealed that determination, and a hearing was held before Administrative Law Judge ("ALJ") David Romeo on November 18, 2020, at which Plaintiff was represented by Valerie Didamo. (R. 38–61). On December 3, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 16–31). Plaintiff filed a request for review of that decision with the Appeals Council, which denied review on July 12, 2021. (R. 1–6). Plaintiff commenced this action on September 14, 2021. (Dkt. No. 1).

### B.     Plaintiff's Background and Hearing Testimony

Plaintiff was born in 1982 and was 36 years old at the alleged onset of her disability and 38 years old at the time of the ALJ's decision. (R. 43). She completed high school and has past work as a receptionist and insurance clerk. (R. 44, 58). Plaintiff testified at the November 18, 2020 hearing that she stopped working on February 1, 2019 because her migraines "continually

---

[3] The Court cites to the Bates numbering in the Administrative Record, (Dkt. No. 10), as "R." throughout this opinion, rather than to the page numbers assigned by the CM/ECF system.

[4] Because Plaintiff's arguments relate solely to her migraines, the Court limits its recitation of the facts to those needed for background and those relevant to Plaintiff's migraines.

kept getting worse" and she "was calling into work." (R. 45–46). She had to leave work or take breaks, and it was "getting too consistent." (R. 46).

Plaintiff testified that, in connection with her migraines, she "will get a sharp pain in [her] head sometimes" or her "left ear will start to ache," and that her jaw hurts. (R. 47). Plaintiff takes medicine but it "doesn't help" and she gets irritable. (*Id.*). She becomes sensitive to sounds and lights, and sometimes "lose[s] [her] words for things." (*Id.*). Plaintiff testified that she had eleven migraines in the month of October 2020 and that the migraines typically last over twelve hours. (R. 48). She has trouble with focus and experiences neck pain and tenseness. (R. 49).

    **C.**    **Medical Evidence**

Plaintiff saw neurologist Jenny Meyer, M.D. for an initial consultation on September 25, 2018. (R. 378). Plaintiff reported that she had a history of headaches for many years but that they had been worsening over the last two years. (*Id.*). She experienced aura, left-sided ear pain, eye sensitivity, jaw pain, stars on the periphery of her vision, and seeing "life in slow-mo." (*Id.*). Plaintiff also reported that she was bothered by noise and light and became nauseated. (*Id.*). At the time, she was having a headache three to four days per week and her triggers included storms, humid days, loud noises, and poor sleep. (*Id.*). Dr. Meyer's physical examination of Plaintiff was generally normal. (R. 378–82). Dr. Meyer recommended that Plaintiff continue taking topiramate and Relpax while she consulted with Plaintiff's cardiologist about changing her medications. (R. 382).

Treatment notes from a visit with Dr. Meyer's clinic on December 21, 2018 reflect that Plaintiff started taking Inderal "to see if that provided her with better migraine control while still controlling her [heart] palpitations." (R. 383). Plaintiff did not report any side effects from the medication. (*Id.*). Plaintiff reported having a severe migraine that lasted for three days in November, for which she took Relpax twice a day as an abortive medication and Zofran for

3

nausea. (*Id.*). Plaintiff was treated with Medrol for that severe migraine, which gave her relief. (*Id.*). The nurse practitioner who saw Plaintiff stated that, with the exception of the severe migraine in November, Plaintiff "report[ed] a reduction in the intensity and frequency of her migraines since" switching to Inderal. (R. 386).

Plaintiff reported to her primary care provider on January 8, 2019 that her migraine symptoms were "stable," she was not experiencing any medication side effects, and she had improved since her last visit. (R. 505). Plaintiff reported eye fatigue, eye pain, and photophobia, but denied nausea and vomiting. (*Id.*).

On March 15, 2019, Plaintiff reported that she had had "several intense migraines which leave her 'knocked down' for at least four days, every single week." (R. 401). Plaintiff felt like she needed to take Relpax for "migraine rescue" every day. (*Id.*). In February, Plaintiff had a severe migraine and heard a "big bang" and saw "flashes of light" but had not experienced any severe symptoms since. (*Id.*). The nurse practitioner concluded that Plaintiff's chronic migraines with aura were "not well controlled on the current treatment regimen." (R. 403). An MRI of the brain was ordered, and Plaintiff was switched to Ajovy, a monthly injectable migraine preventative treatment. (*Id.*).

Plaintiff treated with Dr. Meyer again on July 16, 2019 and reported doing "much better" since started Ajovy. (R. 395). Plaintiff reported that her migraine frequency had reduced from four each week to one or two. (*Id.*). Her migraines also were not as severe or as long in duration, lasting two to three hours. (*Id.*). Plaintiff still got nauseated and fatigued after taking Relpax. (*Id.*). She found some relief from ice packs. (*Id.*). Plaintiff reported that she left her job on February 1, 2019 and was now a housewife. (*Id.*). She believed that leaving her job helped with the headaches because she had less screen time. (*Id.*). Dr. Meyer noted that Plaintiff had a normal

4

MRI of the brain done in April. (R. 396). Dr. Meyer recommended that Plaintiff continue to watch for triggers, continue topiramate and Ajovy, switch from Relpax to Zomig, and use a heat pad on the neck in the evenings. (R. 398). Plaintiff was to follow up in six months. (*Id.*).

In August 2019, Plaintiff's primary care provider reported that Plaintiff had been on Ajovy for three months and "feels a lot better with this medication." (R. 509).

### D.     Opinion Evidence

#### 1.     State Agency Medical Consultants

On November 4, 2019, non-examining state agency medical consultant T. Schmidt-Deyoung, M.D. opined that Plaintiff was able to perform light work activity with additional non-exertional environmental limitations. (R. 68–70). Specifically, Dr. Schmidt-Deyoung opined that, because of her migraines, Plaintiff should avoid even moderate exposure to respiratory irritants, such as fumes and dusts, and hazards, such as machinery and heights. (R. 69). On January 16, 2020, on reconsideration of the initial denial of Plaintiff's claim, non-examining medical consultant I. Seok, M.D. agreed with Dr. Schmidt-Deyoung's initial assessment of Plaintiff's capabilities but imposed two additional limitations. (R. 83–85). Dr. Seok opined that Plaintiff was limited to occasional overhead bilateral reaching and that her migraines required that she avoid even moderate exposure to noise. (R. 84).

#### 2.     Dr. Kalyani Ganesh (Consultative Examiner)

Kalyani Ganesh, M.D. conducted an internal medicine examination of Plaintiff on August 27, 2019. (R. 518–21). Plaintiff reported to Dr. Ganesh that she had migraines "triggered by bright lights, sounds, and smell, usually in the left side of the head, maybe twice a week." (R. 518). Plaintiff took Zomig and Relpax for her migraines. (*Id.*). With regard to her activities of daily living, Plaintiff reported that she could cook, clean, do laundry, shop, shower, dress, and drive. (R. 519). Dr. Ganesh's examination of Plaintiff was unremarkable. (R. 519–21). Dr.

5

Ganesh opined that Plaintiff's prognosis was fair and noted: "Overall movement appears to be quite brisk. No difficulties." (R. 521). Dr. Ganesh did not opine that Plaintiff had any limitations.

### 3. Dr. Jenny Meyer (Treating Neurologist)

Dr. Meyer completed a medical source statement regarding Plaintiff's impairments on October 20, 2020. (R. 781–84). Dr. Meyer listed Plaintiff's diagnoses as intractable migraine with aura without status migrainosus and cervicogenic headache. (R. 781). Dr. Meyer opined that Plaintiff suffered from both migraines and cervical headaches that were moderate in intensity. (*Id.*). Plaintiff's headaches were associated with nausea, phonophobia, photophobia, throbbing pain, inability to concentrate, visual disturbances, and the avoidance of activity. (*Id.*). Premonitory symptoms included left-sided ear and jaw pain and stars in Plaintiff's peripheral vision. (*Id.*). Plaintiff had approximately two to four headaches per week and each lasted two to three hours. (*Id.*). Dr. Meyer noted that Plaintiff was taking Ajovy monthly and was having a "good response," although she had headaches the week preceding the next dose. (R. 782). Plaintiff was also taking Tizanidine nightly for neck pain. (*Id.*).

Dr. Meyer opined that Plaintiff would generally be precluded from performing basic work activities when she had a headache. (R. 782). Dr. Meyer further opined that Plaintiff would need to take unscheduled breaks during the workday approximately one to two times per month, for one to two hours, to lie down or sit quietly. (R. 782–83). She further opined that Plaintiff would be off-task approximately 10% of an eight-hour workday due to her headaches, and that Plaintiff was likely to be absent from work about two days per month. (R. 783). Finally, Dr. Meyer opined that Plaintiff may suffer from poor attention during a migraine and that "sound exacerbates." (*Id.*).

6

E.     **The ALJ's Decision Denying Benefits**

ALJ Romeo issued a decision dated December 3, 2020 and determined that Plaintiff was not disabled under the Social Security Act. (R. 16–31). After finding, as an initial matter, that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024, (R. 18), the ALJ used the required five-step evaluation process to reach his conclusion.[5]

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since her alleged onset date of February 1, 2019. (*Id.*). At step two, the ALJ determined that Plaintiff had the following severe impairments: "migraine headache disorder, seronegative rheumatoid arthritis ('RA'), Sjogren's disease, obesity, bilateral shoulder tendinitis, and fibromyalgia." (R. 19 (citing 20 C.F.R. § 404.1520(c))).[6] The ALJ noted evidence in the record of major depressive disorder, hypertension, anemia, gastroesophageal reflux disease, and supraventricular tachycardia, but found that these impairments were not severe. (R. 19–21).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526)). The ALJ noted that Plaintiff did not allege that any particular impairment or

---

[5] Under the five-step analysis for evaluating disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a severe impairment, (3) that the impairment is not one listed in Appendix 1 of the regulations that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)) (internal quotation marks and punctuation omitted). "The claimant bears the burden of proving his or her case at steps one through four," while the Commissioner bears the burden at the final step. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

[6] Plaintiff does not challenge the ALJ's findings at steps one and two.

7

combination of impairments met or medically equaled a listed impairment and that "[n]o treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairments. (*Id.*). The ALJ gave "particular attention" to Listings 1.02: Dysfunction of a Major Joint, 11:02: Primary Headache Disorders, and 14.10: Sjogren's Syndrome but concluded that the available medical evidence did not demonstrate the required criteria. (*Id.*). With regard to Plaintiff's migraines, the ALJ stated:

> There is no medical evidence in the record to demonstrate the claimant experiences migraine headaches, occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. Furthermore, the claimant's migraine headaches do not cause marked limitations for physical functioning, understanding, remembering, and applying information, interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing oneself. Thus, the undersigned finds the claimant's migraine headache disorder fails to equal the requirements of Listing 11.02.

(R. 22).

The ALJ then proceeded to determine Plaintiff's residual functional capacity ("RFC")[7] and found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except: The Claimant can occasionally reach overhead with the upper extremities. She cannot have concentrated exposure to respiratory irritants. She can tolerate a work environment with a moderate noise intensity level, as defined in the DOT. She can tolerate occasional exposure to light brighter than typically found in an indoor work environment, such as an office or retail store.

(*Id.*). In making this determination, the ALJ followed a two-step process by which he first determined "whether there is an underlying medically determinable physical or mental

---

[7] The regulations define residual functional capacity as "the most [a claimant] can still do despite" her limitations. 20 C.F.R. § 404.1545(a)(1).

impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms," and then evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." (R. 22–23). Applying this two-step process, the ALJ found that while the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 28). In coming to this determination, the ALJ first summarized Plaintiff's reports and the objective medical evidence in the record. (R. 23–27).

The ALJ then considered the medical opinions in the record from Drs. Schmidt-Deyoung, Seok, Ganesh, and Meyer. (R. 27–28). The ALJ found the opinions of Drs. Schmidt-Deyoung and Seok to be "persuasive" in support of Plaintiff's RFC. (R. 27). The ALJ found Dr. Ganesh's opinion "somewhat persuasive" because, while Dr. Ganesh's opinion that Plaintiff had no limitations was well-supported by Dr. Ganesh's personal observations at the consultative examination, it was only partially consistent with the totality of the evidence in the record supporting some limitations. (R. 27–28). The ALJ noted that Dr. Ganesh did "not entirely credit the claimant's alleged migraine symptoms, which warrant some non-exertional environmental limitations." (*Id.*). Finally, the ALJ found Dr. Meyer's opinion "unpersuasive." (R. 28). The ALJ stated that there was "no significant evidence for recent migraines" and that the "records show improvement of her symptoms with new prescription medications." (*Id.*). The ALJ also noted Plaintiff's normal brain MRI and Dr. Meyer's unremarkable neurology examinations. (*Id.*). The ALJ concluded that Dr. Meyer's opinion was "only supported by the claimant's allegations

9

regarding the frequency and intensity of her migraines, which have not required emergency room treatment or any recent neurological evaluations." (*Id.*).

At step four, relying on the testimony of a vocational expert, the ALJ determined that Plaintiff was capable of performing past relevant work as a receptionist and insurance clerk. (R. 29–30). Accordingly, the ALJ found Plaintiff "not disabled." (R. 30–31).

## III.   STANDARD OF REVIEW

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether Plaintiff is disabled. Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence is 'more than a mere scintilla.' It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (per curiam) (quoting *Moran*, 569 F.3d at 112). The substantial evidence standard is "very deferential," and the Court may reject the facts that the ALJ found "only if a reasonable factfinder would *have to conclude otherwise*." *Id.* at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). The Court, however, must also determine whether the ALJ applied the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.'" *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (quoting *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)). The Court reviews de novo whether the correct legal principles were applied and whether the legal

conclusions made by the ALJ were based on those principles. *See id.*; *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

## IV. DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed because (1) the ALJ erred in not concluding that Plaintiff's primary headache disorder medically equals the severity of a listed impairment and (2) the ALJ's RFC formulation is unsupported because it does not include appropriate limitations for Plaintiff's primary headache disorder. (*See generally* Dkt. No. 14).

### A. Step-Three Finding

Plaintiff first argues that the ALJ's finding at step three that Plaintiff's migraines do not medically equal Listing 11.02 was error. (Dkt. No. 14, at 9–14). Specifically, Plaintiff argues that the frequency of her migraines satisfies the criteria of Listing 11.02B and that the ALJ conflated the requirements of Listings 11.02B and 11.02D. (*Id.*). Defendant responds that the ALJ was precluded from making a finding of medical equivalency based on the record before him and that the ALJ's analysis was consistent with and supported by the objective medical evidence in the record. (Dkt. No. 16, at 4–10).

A claimant will be found disabled at step three of the evaluation process if the claimant has an impairment or combination of impairments that "meets or equals" a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); *see id.* Pt. 404, Subpt. P, Appx. 1 ("Listing of Impairments"). An impairment is "medically equivalent to a listed impairment" if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). As both parties recognize, primary headache disorder, where headaches "occur independently and are not caused by another medical condition," is "not a listed impairment." Social Security Ruling ("SSR") 19-4p, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635, at *3,

11

*7, 2019 SSR LEXIS 6, at *5, *16 (Aug. 26, 2019).⁸ The Administration has stated that Listing 11.02: Epilepsy "is the most closely analogous listed impairment" for primary headache disorder and that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)" to warrant a finding of medical equivalence. *Id.*, 2019 WL 4169635, at *7, 2019 SSR LEXIS 6, at *16. SSR 19-4p explains:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [accepted medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.

*Id.*, 2019 WL 4169635, at *7, 2019 SSR LEXIS 6, at *16–18.

Plaintiff contends that there is medical evidence in the record demonstrating that Plaintiff experienced migraine headaches at least once a week, as required by paragraph B, and that the ALJ erred by seeming to "combine" the frequency requirement of 11.02B and the marked-

---

⁸ Social Security Rulings, which are published in the Federal Register "under the authority of the Commissioner," are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(2).

12

limitation requirement of 11.02D. (Dkt. No. 14, at 12–13). Defendant agrees that a claimant will be found disabled at step three if her impairments medically equal the criteria of 11.02B *or* 11.02D. (Dkt. No. 16, at 7). However, a determination about medical equivalence must be based on "the preponderance of the evidence in the record." SSR 17-2p, Titles II and XVI: Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process to Make Findings About Medical Equivalence, 2017 WL 3928306, at *3, 2017 SSR LEXIS 2, at *7 (Mar. 27, 2017). Furthermore,

> [t]o demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:
>
> 1. A prior administrative medical finding from a[] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
> 2. [Medical expert] evidence . . . obtained at the hearings level supporting the medical equivalence finding, or
>
> 3. A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.

*Id.* The record in this case does not contain one of these three types of evidence which supports a finding of medical equivalence, something the ALJ expressly noted. (R. 21 ("No treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairments.")).[9] Thus, the Court concludes that the ALJ did not err in concluding that Plaintiff's migraines did not medically equal Listing 11.02 and need not address the parties' remaining arguments relating to step three. *See Peterson v. Kijakazi*, No. 22-cv-26, 2023 WL

---

[9] Although Plaintiff discusses Dr. Meyer's opinion, Dr. Meyer is not a medical expert. *See* Social Security Administration, Hearings, Appeals, and Litigation Law Manual, § I-2-5-32 (last updated Aug. 29, 2014) (defining medical experts as "physicians, mental health professionals, and other medical professionals who provide impartial expert opinion at the hearing level"). In any event, Dr. Meyer expressed no opinion on medical equivalence, and the ALJ found her opinion unpersuasive. (R. 28).

13

334379, at *7, 2023 U.S. Dist. LEXIS 9911, at *16–17 (D. Conn. Jan. 20, 2023) (holding that the claimant had not met his burden of proving that his impairment medically equaled a listed impairment and finding no error at step three "because the record does not contain either a prior administrative medical finding from the state agency medical consultants, medical expert testimony or written responses to interrogatories obtained by the ALJ at the hearing level, or a report from the Appeals Council's medical support staff[] that supports a finding of medical equivalence" as required by SSR 17-2p).[10]

### B.     RFC Determination

Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence because it does not include appropriate limitations that reflect the severity of Plaintiff's migraine-related symptoms. (Dkt. No. 14, at 15–18). Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony and Dr. Meyer's opinion "largely for a lack of objective medical evidence." (*Id.* at 17).[11] Defendant responds that the ALJ properly considered the evidence of record and that his RFC determination is supported by substantial evidence. (Dkt. No. 16, at 10–13).

In determining a claimant's RFC, the ALJ must consider, in addition to the objective evidence, the claimant's "subjective symptoms," including "pain and descriptions of other limitations." *Lisa R. v. Comm'r of Soc. Sec.*, No. 18-cv-763, 2020 WL 210273, at *4, 2020 U.S. Dist. LEXIS 5796, at *11 (N.D.N.Y. Jan. 14, 2020) (citing 20 C.F.R. §§ 404.1545, 416.945). The ALJ "is not required to accept the claimant's subjective complaints without question" and may

---

[10] To the extent Plaintiff challenges the ALJ's failure to provide a "real analysis" of her impairments at step three, (Dkt. No. 14, at 13–14), a statement that an impairment does not medically equal a listed impairment generally "constitutes sufficient articulation for this finding." *Ruiz v. Comm'r of Soc. Sec.*, No. 20-cv-7638, --- F. Supp. 3d ---, 2022 WL 4076323, at *6, 2022 U.S. Dist. LEXIS 160128, at *16–17 (S.D.N.Y. Sept. 6, 2022) (quoting SSR 17-2p).

[11] Plaintiff does not raise a specific challenge to the ALJ's finding that Dr. Meyer's opinion was "unpersuasive."

14

"exercise discretion in weighing . . . the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

The ALJ employs a two-step process to evaluate the claimant's reported symptoms: (1) the ALJ determines if the claimant has medically determinable impairments that could produce the alleged systems; and (2) if the impairments do exist, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49. In so doing, the ALJ considers factors such as the claimant's "daily activities"; the "location, duration, frequency, and intensity" of pain or other symptoms; precipitating and aggravating factors; the "type, dosage, effectiveness, and side effects of any medication" the claimant takes or has taken to relieve her pain or other symptoms; and "[t]reatment, other than medication," the claimant receives or has received for relief of the pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). "After considering the objective medical evidence, the claimant's demeanor and activities, subjective complaints, as well as any inconsistencies between the medical evidence and the claimant's subjective complaints, an ALJ may accept or disregard the claimant's subjective testimony as to the degree of impairment." *Pidkaminy v. Astrue*, 919 F. Supp. 2d 237, 249 (N.D.N.Y. 2013).

The Court finds that substantial evidence supports the RFC determination, which the ALJ arrived at using this two-step process. After discussing the medical and opinion evidence in the record, the ALJ concluded that Plaintiff's subjective statements were not entirely consistent with that evidence. Although a claimant's statements about pain and other symptoms may not be rejected "solely because the available objective medical evidence does not substantiate" them, 20

C.F.R. § 404.1529(c)(2), here the ALJ considered other factors outlined in Section 404.1529(c)(3). Specifically, the ALJ considered Plaintiff's daily activities, medications, course and history of treatment for her migraines, and her responses thereto. *See id.* § 404.1529(c)(3)(i), (iv), (v). The ALJ summarized Plaintiff's activities of daily living and concluded that Plaintiff was "generally independent" in those activities. (R. 23–24). The ALJ noted that Plaintiff "can independently manage her own personal needs and self-care," although she at times needs assistance from her husband. (*Id.* ("Despite conceding all of these independent activities in her function report, the claimant testified that she is unable to do virtually anything around their home.")). The ALJ found that Plaintiff's reported activities of daily living were "far more consistent with the evidence of record than her hearing testimony." (R. 28–29 (listing activities)).

The ALJ also considered Plaintiff's medications and responses thereto: he noted that Plaintiff's condition was "controlled on a treatment regimen of Trokendi, Inderal, and Relpax" in December 2018 and that Plaintiff "showed improved frequency of migraines and reported doing much better in March 2019 after she began following with a prescription for Ajovy." (R. 25). In discussing Dr. Meyer's opinion, the ALJ observed that Plaintiff's migraines had "not required emergency room treatment or any recent neurological evaluations." (R. 28). Further, the record did not reflect that Plaintiff had "undergone a neurology examination with Dr. Meyer since early 2019, which tends to undermine . . . the claimant's allegations regarding the increased intensity and frequency of her migraines." (R. 29; *see id.* (noting that Plaintiff's neurology evaluations were "unremarkable")). It was proper for the ALJ to consider Plaintiff's response to medication and her conservative treatment regimen in evaluating her credibility. *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646 (S.D.N.Y. 2019) ("While conservative treatment alone is not

16

grounds for an adverse credibility finding, the ALJ make take it into account along with other factors." (internal citation omitted)).[12]

In sum, the Court finds substantial evidence supports the ALJ's evaluation of Plaintiff's subjective statements and therefore the RFC determination. *Cf. Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 82 (N.D.N.Y. 2005) (finding the ALJ properly evaluated and disregarded the plaintiff's subjective complaints after considering her daily activities, medications, and treatment history); *cf. Drake v. Saul*, 839 F. App'x 584, 587–88 (2d Cir. 2020) (summary order) (finding substantial evidence did not support the ALJ's negative credibility determination because "several of the reasons" relied upon were "erroneous"); *see also Snyder v. Saul*, 840 F. App'x 641, 644 (2d Cir. 2021) (summary order) (recognizing the "deferential standard of review" of an ALJ's evaluation of subjective statements). Furthermore, as the above discussion demonstrates and contrary to Plaintiff's suggestion, (Dkt. No. 14, at 17), the ALJ's decision does not lack any explanation tying his discussion of the migraine-related evidence to the RFC determination.

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: February 28, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[12] The Court notes that the ALJ did not entirely discount Plaintiff's subjective reports of her migraine-related symptoms. As Plaintiff concedes, (Dkt. No. 14, at 15), the ALJ included some non-exertional limitations in the RFC to account for her migraines. It was Plaintiff's burden to prove that a "more restrictive RFC" was warranted. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citations omitted). Plaintiff does not identify what additional restrictions she believes the ALJ should have included in the RFC.